```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                    NORTHERN DIVISION
```

MECLYAH DARRELL DANLEY,       :
                              :
     Plaintiff,                :
                              :
vs.                           :
                              :    CIVIL ACTION 13-0081-M
CAROLYN W. COLVIN,            :
Commission of Social Security, :
                              :
     Defendant.               :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 20). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 30). Oral argument was waived in this action (Doc. 28). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-five years old, had completed a high school education (Doc. 20 Fact Sheet), and had previous work experience as a restaurant manager, a server, and a telemarketer (Tr. 56-57). In claiming benefits, Plaintiff alleges disability due to HIV, diabetes, high blood pressure, right leg and lower back pain, depression, and anxiety (Doc. 20 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on February 8, 2011 (Tr. 117-29; *see* Tr. 13). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past relevant work, Danley was able to perform specific light work jobs (Tr. 13-23). Plaintiff requested review of the hearing decision (Tr. 8-9) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Danley alleges that:  (1) The ALJ did not properly consider the opinions of his treating physicians; (2) the ALJ did not properly consider Plaintiff's testimony; (3) the ALJ did not properly consider the combination of his impairments; and (4) the ALJ did not develop a full and fair record (Doc. 20).  Defendant has responded to—and denies—these claims (Doc. 25).  The relevant evidence of record follows.

The Court notes that Danley alleges to have been disabled since December 1, 2010 (Tr. 117).  The medical records preceding that date, generated more than four months before then (Tr. 194-232, 254-72), will not be reviewed herein.

On February 14, 2011, Plaintiff was seen at the Emergency Room of the Jackson Hospital & Clinic for complaints of lower back pain, radiating down into his right leg (Tr. 233-44).  Danley was having no problem walking, though he had a mild limp; there was no tenderness in the extremities.  An x-ray revealed possible mild degenerative disc disease at L5-S1, but was otherwise normal (Tr. 244).  Plaintiff was discharged with prescriptions for Lortab[1] and Flexeril.[2]

---

[1] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[2] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

On February 15, 2011,[3] Danley was seen at the University of Alabama in Birmingham 1917 Clinic (hereinafter *1917 Clinic*) to reestablish care for his HIV (Tr. 248-53). He was experiencing chronic diarrhea, nausea, and vomiting. Plaintiff was diagnosed to be HIV positive and to have poorly-controlled type two diabetes mellitus, hypertension, and low back pain with radiculopathy.

Records from Vaughan Regional Medical Center (hereinafter *Vaughan RMC*) show that Plaintiff was admitted on March 4, 2011, for two nights, for a possible insect bite to his neck with accompanying fever, chills, headache, and nausea (Tr. 304-10). Danley was treated with an antibiotic.

On May 17, 2011, Psychologist Lee Stutts examined Danley, finding him to be fully oriented, calm, and cooperative (Tr. 274-76). Motor skills were grossly intact and he walked without assistance. Memory, judgment, and insight were intact. Plaintiff was estimated to have an average IQ. Stutts diagnosed Danley to have depressive disorder, not otherwise specified; there could have been a degree of personality disturbance. It was the Psychologist's opinion that Plaintiff's "ability to understand and to carry out and remember instructions [was]

---

[3]Plaintiff visited the clinic on February 2, 2011 to initially reestablish care after having lived away from the area for a period (Tr. 251-53). No actual treatment or assessment was made at that time.

4

moderately impaired" and that his "ability to respond appropriately to supervision, coworkers and the public [was] moderately impaired" (Tr. 276).

On June 7, 2011, Psychologist Donald E. Hinton completed a Psychiatric Review Technique Form in which he indicated that Danley suffered from an Affective Disorder characterized by depression (Tr. 277-90).[4] It was the Psychologist's opinion that Danley experienced mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 287). On that same date, Hinton completed a mental residual functional capacity (hereinafter *RFC*) assessment in which he indicated that Plaintiff was moderately limited in his ability to do the following: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting (Tr. 291-94). The Psychologist expressed the further opinions that Danley could maintain attention and concentration for two-hour periods and that he should only have minimal changes in his work setting.

On September 8, 2011 Plaintiff went to the Vaughan RMC with

---

[4]The Court notes that Hinton did not examine Danley personally but made his determinations based on the medical records in existence at the time of his evaluation.

5

complaints of back and right leg pain; he rated the pain, characterized as dull, as five on a ten-point scale (Tr. 297-303). Muscle spasms were noted in the back but there was no tenderness or problem with Danley's range of motion (hereinafter *ROM*); his extremities were normal. Plaintiff was given pain medication, a corticosteroid, and a prescription for hydrocodone.[5]

On January 30, 2012, Plaintiff was seen at the 1917 Clinic for complaints of back and right leg pain, anxiety, and depression (Tr. 333-34; *see generally* Tr. 315-36). Danley reported that he had been hospitalized for an attempted suicide the prior month. The doctor found that Plaintiff's HIV was poorly controlled as he was not adhering to his medical regimen; he was also non-compliant with his hypertension and diabetes. Danley was encouraged to take his medicine and was given a prescription for Xanax.[6] On February 1, Plaintiff reported depression, angry outbursts, fights, isolation and auditory hallucinations; his doctor indicated that he was at a moderate risk for another suicide attempt and was counseled on strategies for coping with issues of guilt, shame, and regret (331-33).

---

[5]**Error! Main Document Only.***Hydrocodone* is used "for the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[6]**Error! Main Document Only.***Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).

Danley was examined on March 26, 2012 at which time he complained of continued depression and hearing voices; he admitted that he had occasionally not taken his medications (Tr. 322-24). On examination, the doctor noted that Plaintiff's HIV was improved, but not suppressed, and that he was still non-compliant with his diabetes; his prescription for Celexa[7] was continued. On May 16, a consulting endocrinologist noted that Danley's diabetes had never been well-controlled (Tr. 317-18).

Treatment records from the Cahaba Center for Mental Health on April 4, 2012, show that Plaintiff was anxious; he had planted some flowers with his grandmother (Tr. 338-41). On April 25, it was noted that Danley's blood sugars had been up and down; he was not suicidal.

On April 23, 2012, Plaintiff was seen at Vaughan RMC for high blood sugar; he reported malaise, weakness, achiness, nausea, and vomiting (Tr. 351-59). The doctor noted mild distress; Danley was diagnosed with acute gastritis and given a prescription for his nausea. On June 30, Plaintiff was seen for moderate pain in his right upper arm; the doctor noted no ROM issues (Tr. 343-50). Cellulitis was diagnosed and Lortab was prescribed.

On July 12, 2012, records from the Cahaba Center for Mental

---

[7]*Celexa* is used in treating depression. **Error! Main Document Only.***Physician's Desk Reference* 1161-66 (62nd ed. 2008).

7

Health show that Danley's diagnosis of Depressive Disorder was confirmed (Tr. 361-63). Prescriptions for Celexa and Xanax were continued. On August 2, it was reported that Plaintiff was compliant with his medications and that he was suffering no side effects (Tr. 364).

At the evidentiary hearing, Plaintiff testified that he quit working because he was too sick (Tr. 36). Danley was nauseated, fatigued, and had a headache (Tr. 36). He was also suffering excruciating right leg pain, which he rated as nine on a ten-point scale; he took Neuronton[8] for it (Tr. 36-38). Plaintiff took a lot of different medications, causing stomach pain, diarrhea, drowsiness, and constant tiredness; the combination also caused fluctuations in his blood sugar (Tr. 40-41). Nausea caused Danley to vomit three or four times a day; he had to lie down to stop the leg pain (Tr. 41). Plaintiff spent 90-95% of his time in bed (Tr. 42). Danley has a health care provider who cleans the house, washes the dishes and bed linens, sweeps the floor, and prepares light meals (Tr. 42). Plaintiff has attempted suicide several times; he has trouble concentrating and remembering things (Tr. 43). Danley's only social interaction is with relatives (Tr. 43). He sleeps only three or four hours a night (Tr. 43-44). Danley has trouble

---

[8]**Error! Main Document Only.***Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

8

standing, walking, and sitting; he has experienced both auditory and visual hallucinations (Tr. 46). Plaintiff testified that he had sharp, shooting pain that starts in his lower back and goes down through his leg into the bottom of his foot (Tr. 52). He stated that he did not think that he had any symptoms from the HIV itself, but that it caused him to take longer to heal (Tr. 53). Plaintiff suffers from both depression and anxiety (Tr. 54). He can only do a few household chores; his leg pain and panic attacks prevent him from driving very often (Tr. 54-55).

A Vocational Expert testified at the hearing about Plaintiff's past work and then, following some questions from the ALJ, listed jobs available that a hypothetical person with Danley's vocational abilities was capable of performing (Tr. 55-61).

Plaintiff's Grandmother, Melvia Danley, testified that Danley lives in her house, though not with her, and that she pays all of the bills because he has been unemployed for a long time (Tr. 62-67). She visits when she can and brings food to him; he is depressed, suicidal, and his condition has gotten worse. His mind has deteriorated, he has trouble concentrating, and he does very little around the house. He lies in bed all of the time and is in a considerable amount of pain.

In his decision, the ALJ found that Plaintiff had the residual functional capacity to perform less than a full range

of light work (Tr. 18). He found that although Danley suffered some pain and exertional limitations, his impairments were not as debilitating as indicated (Tr. 19-20). The ALJ gave considerable weight to the opinions of Dr. Stutts and Psychologist Hinton (Tr. 20-21). The ALJ also adopted the conclusions of the VE as his own, specifically finding that there were jobs that Danley could perform (Tr. 22-23).

This concludes the relevant evidence of record.

Plaintiff first claims that the ALJ did not properly consider the opinions of his treating physicians (Doc. 20, pp. 7-8). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[9] *see also* 20 C.F.R. § 404.1527 (2013).

In raising this claim, Plaintiff points to no medical evidence that was ignored and fails to identify any physician whose opinion was given short shrift (Doc. 20, pp. 7-8). Though Plaintiff provides a short review of his symptoms (Doc. 20, pp.

---

[9]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

4-5), there is no assertion that any particular medical conclusion has been ignored.

On the other hand, the Court finds that the ALJ faithfully reported the medical evidence and credited the evidence on which he relied in reaching his decision. The Court finds the ALJ's decision to be supported by substantial evidence. Plaintiff's claim otherwise is without merit.[10]

Plaintiff next claims that the ALJ did not properly consider his testimony (Doc. 20, pp. 12-13). Danley goes on to assert that the ALJ failed to "provide explicit and adequate reasons" for discounting it (*id.* at p. 12).

The Court notes that the ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent" with his RFC assessment

---

[10]In reaching this decision, the Court notes that it has not considered the evidence provided to the Appeals Council by Plaintiff from the UAB School of Medicine (Tr. 377). **Error! Main Document Only.**It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.
In this action, Plaintiff has not claimed that the Appeals Council improperly denied review of this evidence. Therefore, the Court will not consider it.

(Tr. 19). The ALJ goes on to note that Danley's asserted date of disability, December 1, 2010, bears no relationship to any medical evidence in the record (*id.*). He then notes that Plaintiff's "treatment has been essentially routine and/or conservative in nature, which suggests that his symptoms may not be as severe as alleged in connection with this application" (*id.*). The ALJ went on to note that Danley's "complaints to treating physicians are inconsistent with symptoms of the severity alleged at the hearing" (*id.* at p. 20). The Court would further note that there is medical evidence that Plaintiff has been non-compliant with his doctor's medical advice (Tr. 322-24, 333-34). The Court finds that Danley's claim that the ALJ did not properly consider his testimony is without merit.

Plaintiff next claims that the ALJ did not properly consider the combination of his impairments (Doc. 20, pp. 8-11). It is true that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)C). The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen*

*v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Plaintiff's impairments and concludes by saying that he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 15). This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4"). Danley's claim otherwise is without merit.

Plaintiff's final claim is that the ALJ did not develop a full and fair record. Danley goes on to assert that the ALJ improperly found that he did not have a mental impairment and did not have him evaluated for that impairment (Doc. 20, pp. 11-12). The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ specifically found that Plaintiff had the severe impairment of depression (Tr. 15). The ALJ went on to find that Danley did not meet the requirements of Listing 12.04, going through the specific analysis as to why he did not meet the Listing (Tr. 16-17). The Court also notes that Plaintiff received treatment, including prescriptions from a psychiatrist, at the Cahaba Center for Mental Health for over a period of four months (Tr. 337-41, 360-64), evidence that did not go unnoted by the ALJ (Tr. 21). It should also be noted that Plaintiff underwent a consultative psychological evaluation by Dr. Stutts, ordered by the Social Security Administration (Tr. 273-76). Danley's claim that the ALJ did not fully develop the record is without merit.

Plaintiff has raised four claims in this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 27th day of September, 2013.

s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE